C. FLETCHER MYERS

*v.*

ALLSPRUCE MEADOW COMPANY.

[Filed July 27th, 1899.]

An injunction will lie to restrain a meadow company from overflowing banked meadow lands within its bounds, lying adjacent to a tidal stream, where the company proposes to determine the question of such overflow at a special meeting in May called for the purpose, instead of at an annual meeting in April, as required by *Gen. Stat. p. 2035* ¶ *59* and *Gen. Stat. p. 2028* ¶ *29*, providing that such questions must be passed upon at such annual meeting, before crops are planted.

On bill, answer, order to show cause and affidavits.

*Mr. Daniel V. Summerill*, for the complainant.

*Mr. Samuel H. Richards*, for the defendant.

GREY, V. C.

The complainant is the possessor of a tract of banked meadow land, being a portion of those lying within the bounds of the defendant, the Allspruce Meadow Company, situate on Oldman's creek, in Gloucester county. The defendant company is one of those organized under the act of this state, passed November 29th, 1788, and to be found in *Gen. Stat. p. 2022*, for the purpose of preventing the overflow of the lands adjacent to tidal streams by the construction of a bank, sluices, &c.

The Delaware river railroad constructed its roadbed across this company's lands, thus dividing them into two parts, a portion of the bank being on each side of the railroad bed. In the fall of 1898 a breach in the meadow bank was made by the tidewater on the westerly side of the railroad. The railroad company so filled in, raised and constructed its roadbed as to exclude the tide-water thus admitted from flowing across, through or

under its tracks, thus saving that portion of the meadow which was on the easterly side of the railroad tracks, from overflow. The complainant's land lies in this easterly part of the meadow company's tract.

The clerk of the meadow company has given notice of a special meeting of the defendant, Allspruce Meadow Company, on May 27th, 1899, for the purpose of determining, by vote, the advisability of placing said Allspruce meadows " out to the tide " for a term of years. . The portion of meadow lying on the westerly side of the railroad is already " out to the tide," and the only object of such a meeting must be to throw out the easterly portion of which the complainant's meadow forms a part.

The placing of banked meadows " out to the tide," means its temporary abandonment and the ruin of all growing crops within. the bank, as the daily in and outflow of the tide-water will effectually destroy all herbage except water plants. This is also, for a time at least, an abandonment of the maintenance of the banks, sluices, ditches and other water-works of the meadow company, perhaps with an expectation of the ultimate improvement of the land by securing an additional deposit of silt from the overflow of the tide-water and a subsequent restoration of the bank and resumption of its functions by the meadow company. Such a course of management is quite common in those localities were tide-meadow companies have been established. But to secure the benefits of such a deposit of silt requires several years of overflow, and meanwhile all present profits of the meadow must be given up. It is quite obvious that so important a transaction as the voluntary placing the meadow " out to the tide," necessarily resulting in the entire destruction of all the grass and other crops there growing, would work serious injury to the owners and occupiers of meadow lands lying within the bounds of the meadow company. For this reason, the statute regulating the actions of these meadow companies requires, that if this particular matter of overflowing the meadow is to be passed upon, it must be at an annual meeting of the company, and that the owners of more than one-half of the meadow lands shall agree to the overflowing. *Gen. Stat. p. 2035*

¶ 59. These annual meetings are required to be held in the month of April (*Gen. Stat. p. 2028 ¶ 29*), when such tilled crops as are raised on such meadows are unplanted, and when, if the meadows are used for grass, other arrangements to supply the loss of the crop may be made.

The defendant company proposes to determine this question, not at the annual meeting of the company, so required by the statute, but at a special meeting called for that particular purpose, and not in April, as prescribed by the act, but on the 27th day of May.

This is an act outside of the statutory powers given to the company, which will, if submitted to, put the complainant in a position of great danger of the destruction of his growing grass or other crop on the easterly side of the railroad bed and also of his meadow land for all its present uses.

An injury of this sort will be of a continuing character, destructive of all the profit which may be derived from these meadow lands, so long as the overflow be permitted. For redress the complainant may be obliged to bring as many successive suits as he loses crops and to look to persons who would, if such a resolution passed, attempt to justify their conduct by the company's unauthorized action.

The defendant, in its answer, asserts that there is authority in the law for holding such a meeting at the time and for the purpose above named. But neither in the answer nor in any affidavit, nor in argument, is any authority in the law for such proposed action referred to or set forth.

The defendant further alleges that the breach in the tide-bank on the westerly side of the railroad bed is at that precise point where, in 1804, commissioners who laid out the meadow had directed that the occupiers of "Heston and Carpenter's meadow" should keep up sixty-five rods of bank; that the complainant is an occupier of at least some part of the "Heston and Carpenter meadow," and as he and the other occupiers of that meadow have not mended that breach, the defendant contends that the complainant has no standing to invoke the aid of this court to

stop its proposed, though unauthorized, meeting to put the rest of the meadow " out to the tide."

Whether this contention could be sustained as a defence if the facts were proven it is not necessary to determine, for the affidavits which are relied upon to support it do not sufficiently establish its truth.   The allotment of the different portions of the bank to be maintained was with relation to the ownership of the portion of the meadow within the bank as they were held in 1804.   To present the point in question it is necessary to show, first, that the neglected breach is within the sixty-five rods allotted to be maintained by the occupiers of the " Heston and Carpenter meadow," and secondly, to prove that the complainant is an occupier of those particular lands of " Heston and Carpenter" which, in 1804, were charged with a duty to maintain that part of the bank.   The affidavits submitted are those of parties whose knowledge of the location of the meadow lands extends back but thirty years.   As to the portion of the bank allotted, there is some aid from the commissioners' report, copy of which is annexed to the bill, but on the second point, that the complainant is an owner or occupier of a part of those lands of " Heston and Carpenter" which were, in 1804, charged with the maintenance of that part of the bank in which the breach has occurred, the report does not identify those lands in any way except by statement of quantity.   There is no other proof than a statement that the affiants " know by reputation that complainant is an occupier of part of the said ' Heston and Carpenter meadow'" and an allegation that the complainant and his father had been heard to say that part of the tract now occupied by complainant is " Heston and Carpenter's meadow." There are ofttimes many and various tracts designated by the name of an owner.   It is not all lands or meadows of " Heston and Carpenter" which are charged, but only these pieces which, in 1804, were referred to by the commissioners.   These are not in any way identified.  Such proof as this is quite too general and uncertain to be made the basis on which to deny protection from a threatened irreparable injury.

The meadow company, defendant, proceeding in accordance with the powers given it by the statute, may, at the proper time and in the mode prescribed by the act, pass upon the question in dispute. Its proposed course of procedure is without its power, and threatens to do the complainant an injury from which the defendant should be restrained.

I will advise the issuing of a preliminary injunction.